NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4782

THE STATE OF OHIO, APPELLEE, *v.* GASPER, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Gasper*, Slip Opinion No. 2024-Ohio-4782.]

*Ohio Jury Instruction CR § 507—Substantial impairment of a victim—R.C. 2907.02(A)(1)(c)—Rape victim can be found to be substantially impaired based on a permanent mental condition—Judgment affirmed.*

(No. 2023-0786—Submitted March 26, 2024—Decided October 8, 2024.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-220218, 2023-Ohio-1500.

_____

FISCHER, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, DONNELLY, STEWART, BRUNNER, and SULEK, JJ., joined. DONNELLY, J., authored a concurring opinion joined by BRUNNER, J. CHARLES E. SULEK, J., of the Sixth District Court of Appeals, sat for DETERS, J.

**FISCHER, J.**

{¶ 1} In this case, we are asked to determine whether the Ohio jury instruction defining the "substantial impairment" of an alleged rape victim applies to the victim's impairment from a permanent mental condition. For the reasons set forth below, we conclude that the jury instruction defining a victim's substantial impairment does include impairment from a permanent mental condition.

## FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Appellant, Mark Gasper, was indicted on seven counts of rape, in violation of R.C. 2907.02(A)(1)(c). That statute prohibits sexual conduct with a person whose ability to resist or consent is "substantially impaired because of a mental or physical condition." Relevant here, Count 1 related to the first sexual encounter between Gasper and the alleged victim.

{¶ 3} When the alleged crimes occurred, Gasper was employed as an in-home licensed practical nurse to disabled children. The seven charges related to a long-term sexual relationship between Gasper and K.W., a then-32-year-old woman with cerebral palsy and intellectual disabilities of disputed severity. K.W. is a sister of patients who were under Gasper's care, and she lived in the home where Gasper worked.

{¶ 4} Before trial, the state notified Gasper that it would not rely on K.W.'s physical condition in pursuing the rape charges, but rather would seek to prove that K.W. had a substantial mental impairment that prevented her from consenting to sexual conduct. Evidence at trial revealed that on the night of the first sexual encounter, K.W. had taken Baclofen, which she did routinely. Baclofen was prescribed to reduce K.W.'s muscle spasms and not to combat insomnia, but the drug tended to make K.W. drowsy. Other evidence included a state expert's testimony that K.W.'s mental capacity to consent to sexual conduct was impaired and a defense expert's testimony that K.W. was intellectually able to consent to sexual conduct.

{¶ 5} At the conclusion of the trial, the jury received the standard jury instruction addressing charges of rape, part of which states: "'Substantially impaired' means a present reduction, diminution, or decrease in the victim's ability either to appraise the nature of [her] conduct or to control [her] conduct." *Ohio Jury Instructions*, CR § 507 (Rev. Jan. 22, 2011). Comment 10 to this instruction notes that this language comes from *State v. Zeh*, 31 Ohio St.3d 99 (1987). Gasper did not object to this instruction at trial.

{¶ 6} During its deliberations, the jury submitted the following question to the judge: "Does medication come into consideration when evaluating or assessing mental condition?" The court directed the jury to use the instructions it had been given. Thirty minutes later, the jury returned its verdicts: the jury found Gasper guilty on Count 1 and not guilty on all other counts. Gasper then filed a motion for acquittal or in the alternative a new trial, asserting that the trial court's response to the jury's question about K.W.'s medication changed the state's theory of the case midtrial and prevented him from preparing a defense. Gasper argued that the verdicts were "substantially and logically inconsistent" and that the medication issue was the only possible explanation for the inconsistency with the verdicts on the other six counts. The trial court denied the motion.

{¶ 7} The First District Court of Appeals unanimously affirmed Gasper's conviction. 2023-Ohio-1500, ¶ 81 (1st Dist.). It concluded that the trial court did not abuse its discretion in denying Gasper's motion for a new trial, agreeing with the trial court that the state did not change its theory of the case or the nature of the charges. *Id*. at ¶ 45. It noted that the trial court's response to the jury's question regarding the medication was not a "green light" for the jury to consider improper evidence, and it stated that it must presume that the jury followed the court's original jury instructions. *Id*. The appellate court also emphasized that there were no interrogatories to test the basis of the jury's verdicts and that it would not

speculate why the jury convicted Gasper on the first count but acquitted him of the remaining counts. *Id*. at ¶ 46.

{¶ 8} The court of appeals further concluded that there was sufficient evidence to support Gasper's conviction, as the case was essentially a battle of the experts, with there being sufficient evidence to support the conclusions that K.W. lacked the capacity to consent to sexual conduct and that Gasper knew or had reason to believe that K.W.'s ability to consent was substantially impaired. *Id*. at ¶ 67, 69.

{¶ 9} We accepted jurisdiction over Gasper's appeal in which he set forth a single proposition of law: "In a prosecution for rape under R.C. 2907.02(A)(1)(c), the definition of substantial impairment in *State v. Zeh*, 31 Ohio St.3d 99, 509 N.E.2d 414 (1987) does not apply to an impairment from a permanent mental condition." *See* 2023-Ohio-3432.

**ANALYSIS**

{¶ 10} In connection with his proposition of law, Gasper argues that the standard jury instruction on substantial impairment is flawed because it implies that the term can relate only to a temporary condition and that the use of that instruction in this case opened the door for Gasper to be improperly convicted based on evidence of K.W.'s having taken her usual, prescribed medication, which was contrary to the state's original theory of the case. We review questions of law de novo. *State v. Towns*, 2022-Ohio-3632, ¶ 9.

{¶ 11} The jury instruction on substantial impairment incorporates language from this court's decision in *Zeh*. In that case, an expert witness testified that the victim was "low on the intelligence scale" and suffered from permanent mental deficiencies. *Zeh* at 100-101. This court offered an explanation of what "substantially impaired" means in this context:

> The phrase "substantially impaired," in that it is not defined
> in the Ohio Criminal Code, must be given the meaning generally

understood in common usage. As cogently stated by the appellate court, substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct.

*Id.* at 103-104. This court then added, "This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." *Id.* at 104.

{¶ 12} Gasper contends that the trial court's jury instruction failed to fully apply *Zeh*, which he asserts was intended to apply only to temporary conditions. Essentially, Gasper claims, use of the term "present" in *Zeh* and in the standard jury instruction on what it means to be "substantially impaired" implies that the mental or physical condition causing the person to be substantially impaired was temporary.

{¶ 13} That is not what this court said in *Zeh*, however. What the term "present" means in *Zeh* is that the impairment must exist at the time of the events in question. Gasper fails to identify any decision or other source (outside of his own argument) indicating that this language from *Zeh* has caused confusion for anyone in the 37 years since that decision was announced. *Zeh* states that substantial impairment is established when the evidence shows that a reduction, diminution, or decrease in the victim's ability was present when the alleged offense occurred. *Zeh*, 31 Ohio St.3d at 103-104. We see no need to offer any further elaboration on this clear point of law. Because the rule established in *Zeh* allows for evidence of a permanent mental condition to establish substantial impairment, we reject Gasper's proposition of law.

{¶ 14} Furthermore, Gasper failed to object at trial to the jury instruction that he now challenges. *See* Crim.R. 30(A). A defendant who fails to object to jury instructions waives all but plain error. *State v. Owens*, 2020-Ohio-4616, ¶ 7. To

show reversible error under plain-error review, *see* Crim.R. 52(B), three elements must be met: there must first be a deviation from a legal rule, that deviation must be an obvious defect in trial proceedings, and the deviation must have affected substantial rights, *State v. Eafford*, 2012-Ohio-2224, ¶ 11, citing *State v. Payne*, 2007-Ohio-4642, ¶ 16.

{¶ 15} Gasper has failed to demonstrate plain error. First, as explained above, because evidence of a permanent mental condition may be used to establish substantial impairment, the trial court's jury instruction did not deviate from the rule announced in *Zeh*. Second, Gasper has not established that he suffered any prejudice from the trial court's jury instruction that affected his substantial rights. As the First District explained, the state presented expert testimony during trial that K.W. was substantially impaired. *See* 2023-Ohio-1500 at ¶ 67 (1st Dist.). The First District also correctly acknowledged that trial testimony established that Gasper knew or had reasonable cause to believe that K.W. was substantially impaired. *Id*. at ¶ 70. We will not speculate about why the jury found Gasper guilty on Count 1 but not guilty on the other six counts. That issue is beyond the scope of the proposition of law we accepted for review.

{¶ 16} For the above reasons, we do not find plain error in this appeal. Because the trial court's jury instruction correctly applied the rule set forth in *Zeh*, and because Gasper has failed to demonstrate plain error, we affirm the judgment of the First District.

## CONCLUSION

{¶ 17} Our decision in *Zeh*, 31 Ohio St.3d 99, clearly provides that a person may be "substantially impaired" based on a permanent mental condition that exists at the time of an alleged crime. Because Gasper has failed to identify any reversible error in this case, we affirm the First District Court of Appeals' judgment.

Judgment affirmed.

_____

**DONNELLY, J., joined by BRUNNER, J., concurring.**

{¶ 18} I join the majority's decision to affirm the judgment of the First District Court of Appeals. As the majority properly sets out, a permanent mental condition may be used to establish that the victim of a crime was "substantially impaired" when the offense occurred. And while I take no issue with the majority's reasoning or its conclusion, I feel compelled to write separately to express a certain frustration with this case's outcome.

{¶ 19} During its deliberations in Mark Gasper's trial for seven counts of rape in violation of R.C. 2907.02(A)(1)(c), the jury asked the trial court whether it could consider what effect the medication that the victim, K.W., took might have had on her mental condition. Before providing a response, the trial court heard arguments from the State and Gasper, during which Gasper argued that the trial court should instruct the jury not to consider the medication's effects because that consideration would fundamentally change the State's theory of the case and the nature of the indictment. The trial court determined that it would not provide further instructions to the jury, and it directed the jury to use the instructions previously given. A short time later, the jury returned a verdict finding Gasper guilty of one count of rape, while acquitting him on the remaining counts.

{¶ 20} In the trial court, the court of appeals, and now this court, Gasper has argued that the trial court's failure to prohibit the jury from considering the medication's effects on K.W. fundamentally altered the nature of the charges against him without providing him adequate notice of the change. In doing so, Gasper has raised questions that suggest a violation of his constitutional rights to procedural due process and to a fair trial. *See* U.S. Const., amends. V, VI, and XIV; Ohio Const., art. I, § 10; *see also Strickland v. Washington*, 466 U.S. 668, 684-685 (1984) ("[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues *defined in advance of the proceeding*." [emphasis added]).

{¶ 21} Unfortunately, this court cannot reach those constitutional claims, because Gasper has couched them in a question of law that deals purely with the language of a jury instruction. When resolving questions of law raised on appeal, courts "rely on the parties to frame the issues for decision" and act as "neutral arbiter[s] of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). The only legal matter Gasper raised was whether the jury instruction addressing "substantial impairment," which incorporates this court's definition of that term in *State v. Zeh*, 31 Ohio St.3d 99, 103-104 (1987), includes impairment caused by a permanent mental condition. As the majority opinion shows, the question that Gasper has raised is a pure question of law that requires little elaboration or explanation beyond an analysis of our decision in *Zeh*. The question as presented does not implicate whether the trial court's actions during the jury's deliberations violated Gasper's constitutional rights. So we cannot reach those important claims.

{¶ 22} To be sure, when preparing a case for appeal to this court, advocates must make tough decisions and strategic choices when determining which issues they should raise. While we are not an error correcting court, we are tasked with addressing "issues of public or great general interest." Ohio Const., art. IV, § 2(B)(2)(e); *see also State v. Noling*, 2013-Ohio-1764, ¶ 63 (O'Donnell, J., dissenting). And, to my mind, resolving constitutional issues that have arisen from a criminal trial is an issue of public interest. Thus, I encourage advocates preparing appeals to this court to craft propositions of law that properly and completely encompass the legal errors they will argue and for which they seek redress. This will help avoid situations like the one here—in which the question presented by the appellant prevents this court from addressing the more foundational issues raised by the appellant's arguments.

———————————

Melissa A. Powers, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, for appellee.

Raymond T. Faller, Hamilton County Public Defender, and David Hoffmann, Assistant Public Defender, for appellant.

_____